UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

UNITED STATES OF AMERICA          )
                                  )
            Plaintiff,            )          No. 13-CR-49-KSF/REW
                                  )
v.                                )
                                  )          RECOMMENDED DISPOSITION
MARCOS REYES-GOMEZ,               )
                                  )
            Defendant.            )

***   ***   ***   ***

The Court assesses a motion to suppress filed by Defendant, Marcos Reyes-Gomez. DE #17 (Motion). Reyes faces an aggravated methamphetamine trafficking charge related to alleged conduct in Scott County on March 26, 2013. DE #6 (Indictment). The suppression motion challenges the validity of a traffic stop performed by Kentucky State Police (KSP) Trooper Jeremy Devasher. Movant complains that adequate cause did not support the stop. He also challenges the propriety of the ensuing warrantless search of the vehicle. The United States responded in opposition, DE #19 (Response), and Defendant replied. DE #21 (Reply). On June 17, 2013, the Court conducted an evidentiary hearing attended and participated in by all concerned.

The case requires the Court to evaluate the propriety of Trooper Devasher's traffic stop of Reyes's Escalade after the Trooper allegedly viewed Reyes operating the vehicle without a seat belt and whether subsequent events justified a warrantless search of the vehicle. Here, based on the hearing record, Devasher plainly had probable cause to conduct a traffic stop of the vehicle. Further, the later positive drug dog alert established probable cause for the search. As such, under recognized Fourth Amendment warrant-

1

exception principles from the Supreme Court and the Sixth Circuit, the search of the vehicle was proper.  The Court thus recommends denial of the motion to suppress.

## I.    Hearing and Arguments

The Court encounters and has fully analyzed an extensive record.  The record includes the parties' briefing, DE ##17, 19, 21, as well as the hearing and exhibits.  The hearing featured testimony from KSP Trooper Devasher and Scott County Sheriff Deputy, and handler of "Hugo," Jeremy Nettles.

The March 26, 2013 events themselves are not significantly disputed.  Trooper Devasher, during the normal course of his duties, was in Scott County preparing to turn onto Lisle Road from the Spindletop Trailer Park when he observed an individual not wearing a seatbelt drive past him in a blue Escalade.  Devasher later identified the driver as Defendant, Marcos Reyes-Gomez.  It was approximately mid-day (around lunch time) and sunny when Devasher saw Reyes operating the Escalade.  Devasher turned and followed the Escalade until he reached a safe location to conduct a traffic stop, approximately half a mile farther.  Devasher activated his emergency lights, and Reyes pulled over.

Devasher approached the vehicle on the driver's side and requested Reyes's driver's license, registration, and proof of insurance.  Devasher visually confirmed that the driver was not wearing a seatbelt.[1] Reyes-Gomez apologized when told of the reason for the stop.  Defendant provided proof of registration, which indicated that the car was registered to his sister, Priscilla Reyes, as well as an insurance card and an international driver's license document.  Government's Ex. No. 1.  Devasher advised Reyes that the

---

[1] At the hearing, Devasher identified Defendant, Reyes-Gomez, as the driver of the Escalade.

2

tendered driving document was not a legitimate international driver's license.  Defendant protested and opened up his wallet, generally indicating the document was all he had.  At that point, Devasher asked Reyes to exit the vehicle, in order to investigate/confirm his identity.  When questioned by Devasher, Reyes stated that one of the cell phones observable in the car belonged to him and the other to his sister.

Reyes followed Devasher to the cruiser, where the Trooper patted Reyes down and found no weapons.  Devasher then sat in the driver's seat while Reyes stood outside on the passenger side of the vehicle.  Devasher testified that, at this point, Reyes was cooperative, and he intended only to cite Defendant for the traffic violations, although he also would arrest Reyes if he could not confirm identity.  Defendant identified himself as Marco Reyes and provided a date of birth of July 29, 1985.  Devasher ran the identifiers Defendant provided through a law enforcement database, and an active Jessamine County warrant surfaced for a "Marcos Reyes" with a date of birth of July 29, 1984.  Devasher suspected that Defendant might be the individual named on the warrant, so he exited his vehicle, opened the back passenger door, and advised Reyes that he intended to detain him while he confirmed the validity of the warrant.  At that point, Defendant fled the scene on foot.  Devasher pursued Reyes, yelling his name and calling out for him to stop.  Devasher indicated that, at times, Reyes stopped out of exhaustion, but that Reyes managed to stay ahead of him.

After approximately half a mile, Defendant entered a trailer, into which Devasher then forced entry.  Reyes fled to the back of the trailer, causing Devasher to twice utilize his Taser (once with the prongs and once without).  Defendant fought through the tasings, and Devasher used closed-fist physical force to finally subdue Defendant.  Devasher

arrested Reyes, handcuffed him, and walked him back to the scene. Devasher then searched Reyes's person, finding under $1,000 in cash and 4 Oxycodone 30 mg tablets in a small, unmarked manila envelope in his wallet. Upon discovering the drugs, Trooper Devasher called a canine unit, and Scott County Sheriff Deputy Jeremy Nettles and his dog, Hugo, a German Shepherd, responded.

Per Deputy Nettles and the exhibits, Nettles and Hugo are certified through the North American Police Work Dog Association. The pair was originally certified in a seven-week training course in Elkhart, Indiana, in August 2011, and they return to Elkhart yearly for a two-week recertification. As of November 2012, Hugo is certified in narcotics detection, including marijuana, methamphetamine, cocaine, and heroin; area search; building search; article search; tracking; aggression control; and obedience. Government's Ex. No. 3. Nettles conducts ongoing, controlled-environment training simulations (approximating real-life situations) for Hugo approximately every two weeks. *See generally* Government's Ex. No 4 (training records from April 30, 2012 to May 21, 2013). Nettles confirmed that Hugo has never alerted in a false positive manner and has been deployed in the field between approximately 27 and 30 times. Defendant offered no proof to undercut Hugo's credentials or reliability.

On the date in question, Nettles was off-duty but close and responded to the call immediately. Per Nettles, he was at home with Hugo when he received the call, and they arrived at the Lisle Road scene within 5-10 minutes. Upon arrival, Trooper Devasher debriefed Nettles, and Nettles guided Hugo around the Escalade. Hugo did not alert on the first pass around the vehicle. Per Nettles, it is not unusual for Hugo not to alert on the first pass. Nettles testified that (as is typical) he guided Hugo very low to the ground

during the first pass, raising the guide to door level during the second pass.  Hugo alerted

to the area between the front and back doors on the driver's side of the vehicle on the

second pass. Nettles advised Devasher of the positive alert and stood-by as Devasher and

KSP Trooper Hawkins searched the vehicle.  Under the front driver's seat, accessible

from the rear, Hawkins found a Tupperware container, wrapped in clear cellophane, and

overwrapped in a black bag, containing suspected crystal meth.  Government's Ex. Nos.

2B-2D.  Hawkins field-tested the substance, which tested positive for methamphetamine.

Government's Ex. No. 2E.

Devasher then took Reyes to the Drug Enforcement Agency, where agents

processed him and filed a criminal Complaint.  Defendant appeared before the Court

pursuant to the Complaint on March 27, 2013.  *See* No. 5:13-MJ-5103-REW.  The grand

jury indicted Defendant on April 5, 2013, and District Judge Forester arraigned him on

April 12, 2013.

Per Movant, the traffic stop was invalid and the warrantless search of the Escalade

was improper under the Fourth Amendment.  Reyes also critiques the lapse of time

between the initial stop and the arrival of the canine unit.  He claims constitutional

violations and seeks suppression as the proper remedy.  The United States argues that the

initial traffic stop was proper and contends that Reyes lacks standing, via abandonment,

to challenge the search of the vehicle. Alternatively, the Government argues that the

"automobile exception" to the warrant requirement, premised on Hugo's positive alert,

validates the warrantless search of the vehicle.  The prosecution denies any temporal

vulnerability in the dog sniff.  The parties' briefs generally set forth their theories, as

amplified in the hearing record.

## II.     Analysis

### 1.   Trooper Devasher's stop of the Escalade was valid and supported by probable cause.

"[S]topping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention is quite brief." *Delaware v. Prouse*, 99 S. Ct. 1391, 1396 (1979) (citations omitted).  In a scenario of this type, an officer must have probable cause to believe that a traffic violation is being committed prior to effectuating a traffic stop. *United States v. Scott*, No. 08-23-KSF, 2008 WL 852043 (E.D. Ky. Mar. 28, 2008).[2]  Reyes attacks the initial stop, stating: "The Report of Investigation indicates nothing more than that Trooper Devasher observed Reyes not wearing a seat belt, but indicates no other details which lead to confirm that observation was accurate or reasonable.  There is no mention of the amount and quality of light present, the time of day, the rate of speed Reyes' vehicle was traveling when it passed Trooper Devasher, or whether the windows of Reyes' vehicle were tinted or not."  DE #17-1 (Memorandum) at 2.

Probable cause familiarly references a common sense, totality of the circumstances assessment of the basis for an arrest or search.  *See, e.g., United States v.*

---

[2] The Sixth Circuit has made clear that law enforcement may lawfully "stop a car when [they] have probable cause to believe that a civil traffic violation has occurred" or if they have "reasonable suspicion of an ongoing crime."  *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012) (citing *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)).  Simply because a traffic violation is not an arrestable offense "does not divest the police of authority to stop the vehicle."  *Id.* (citing *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010)).

Under Kentucky law, a violation of the mandatory seat-belt statute, K.R.S. § 189.125(6), is a civil, fine-only offense.  *See* K.R.S. § 189.990(26) ("Any person who violates the provisions of KRS 189.125(6) shall be fined an amount not to exceed twenty-five dollars ($25).").   Under the applicable standard, the Government must thus establish that Devasher had probable cause to conduct a traffic stop of Reyes's vehicle.

*Torres-Ramos*, 536 F.3d 542, 554-55 (6th Cir. 2008).  A court must determine whether, "'the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *United States v. Hughes*, 606 F.3d 311, 320 (6th Cir. 2010) (quoting *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005)). The standard requires "more than mere suspicion" but not "evidence to establish a prima facie case . . . much less evidence sufficient to establish guilt beyond a reasonable doubt." *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998). Importantly, the probable cause standard is objective.  "Subjective intentions play no role in probable cause Fourth Amendment analysis." *Schneider v. Franklin County,* 288 F. App'x 247, 251 (6th Cir. 2008) (citing *Whren v. United States*, 116 S. Ct.  1769 (1996)).

Applying these principles to the hearing testimony, the Court finds that Trooper Devasher did have probable cause to stop the car, as operated by Reyes-Gomez, for violating KRS § 189.125(6), failure to wear a seat belt while operating a motor vehicle. It was around noon when Devasher saw Reyes driving the Escalade without a seat belt.  It was a clear day with plenty of sunlight.  Devasher indicated that the Escalade passed by him in the outside lane in "close" proximity, the driver's seat facing Devasher.  He testified that the Escalade had only minor tint on the windows, and that it passed by Devasher's cruiser at a rate of speed within the legal limit.  After stopping the Escalade, the Trooper visually confirmed that Reyes was not wearing a seatbelt. Upon advising Reyes why he had pulled him over, Reyes allegedly responded, "Sorry."

Devasher testified that checking for seatbelt violations is part of his job, as is checking for any traffic violation.  The Trooper admitted that, in part due to his years of

experience and training, he constantly scans for traffic violations, including expired tags, seatbelt violations, speeding, etc.  Devasher indicated that he even does so inadvertently while not on duty.

Here, the testimony plainly established probable cause to support the traffic stop of the Escalade.  The day was sunny, and Devasher saw Reyes pass in an observable way, at a short distance, not wearing a seatbelt.  Devasher confirmed the absence of the safety belt when he approached the vehicle in person.  Further, Devasher denied that Reyes's stature (per the Jessamine County warrant, 5 feet, 3 inches)[3] made it difficult to see him driving the SUV.  Defendant was not speeding.  Further, at the end of the hearing, Defendant essentially conceded the point, noting that, at the time he filed the motion, Devasher's report was insufficient to evaluate the legitimacy of the traffic stop.  Simply put, the traffic stop was valid and supported by probable cause.

2. *The driving document Reyes tendered provided the Trooper with a legitimate basis to remove Reyes from the vehicle and extend the traffic stop.*

After being stopped, Defendant provided Devasher an international driving document identifying himself as Marcos Reyes.  Government Ex. No. 1.  Based on his knowledge, training, and experience (including 12 years as a Trooper), Devasher concluded the tendered document was invalid.  Reyes indicated that he had no further means of identification.  As Devasher needed a valid identification in order to charge Reyes with the seat belt and any driver's license violation, Devasher asked Reyes to exit

---

[3] The Court notes the discrepancies concerning Defendant's height.  The parties indicated at the hearing that the Jessamine County warrant described Defendant as 5 feet, 3 inches tall. The Uniform Citation Devasher issued in response to executing the Jessamine County warrant describes Defendant as 5 feet, 4 inches.  Defendant's Ex. No. 2.  Finally, the alleged international driving document indicates that Reyes is 5 feet, 7 inches. Government's Ex. No. 1.  These discrepancies do not impact the Court's overall analysis, as Devasher testified that he was able to see Defendant driving without his seat belt.

the vehicle so he could investigate further. Devasher patted down Reyes and found no weapons. Devasher testified that, at that point, Reyes was cooperative and not under arrest, although he was not free to leave. Devasher also stated that he intended to arrest Reyes only if he was unable to positively identify him.

Reyes stated his name as "Marco Reyes," which Devasher ran, with Reyes's stated DOB, through a law enforcement database. The Jessamine County warrant flashed, although it was not a perfect match to the Defendant's identifiers. The linkage – the same name and nearly the same birthdate - justified further inquiry. Devasher determined to detain Reyes further, in an effort to confirm the validity of the warrant. Devasher exited the cruiser, walked to the passenger side, and asked Reyes to sit in the back seat. Reyes then fled the scene. This obviously was inculpatory.

The Court credits Devasher's determination that the international driving document Reyes presented was invalid. Government Ex. No. 1. Devasher testified that he has considerable experience with these documents and that, based on his knowledge, training, and experience, the document was not authentic. Defendant offered nothing to impugn Devasher's determination. *See, e.g., United States v. Norfleet*, 143 Fed. App'x 645, 651 (6th Cir. 2005) (recognizing propriety of police reliance on "their experience and training" in assessing traffic stop circumstances) (citations omitted); *United States v. Turner*, 47 F.3d 1172, at *2 (6th Cir. 1995) (table) ("An officer can justifiably rely upon his training and experience in asserting whether criminal activity is occurring." (citation omitted)); *United States v. Spencer*, 838 F.2d 1216, at *2 (6th Cir. 1988) (recognizing that "police may rely on their training and experience to draw inferences and deductions" in the field (citation omitted)). Further, based upon that determination, Devasher had a

legitimate basis to ask Reyes to exit the vehicle. *United States v. Robinson,* 78 Fed.

App'x 501, 505 (6th Cir. 2003) (upholding an officer's decision to remove a defendant

from the vehicle when the suspect could not provide a driver's license, noting that

removal was "'reasonably related in scope to the situation at hand'" (citation omitted)).

Accordingly, the traffic stop and subsequent removal of Reyes from the vehicle were

proper and withstand constitutional scrutiny.[4] Devasher, faced with reasonable questions,

was entitled to confirm Reyes's identity, license status, and query for warrants.

> 3. *Hugo's positive alert to the Escalade establishes probable cause to support law enforcement's warrantless search of the vehicle, pursuant to the automobile exception.*

Movant also seeks to invalidate Devasher and Hawkins's warrantless search of

the Escalade under *Arizona v. Gant*, 129 S. Ct. 1710 (2009), arguing that, because Reyes

was in custody and without access to the passenger compartments of the car at the time of

the search, law enforcement could not search the vehicle incident to arrest. DE #17-1

(Memorandum) at 3. The United States defends the search as valid pursuant to the

automobile exception, which recognizes that law enforcement can search a vehicle,

without a warrant, if probable cause exists to believe the vehicle contains evidence of a

crime. DE #19 (Response) at 6. Here, the Government asserts that Hugo's positive alert

established probable cause to conduct a warrantless search. In reply, Defendant alleges

---

[4] The Court notes that non United States citizens may drive in the United States on their valid foreign license and an International Permit for up to one year from the date of admission into the United States, so long as the individual's home country is part of the Geneva Compact. A driver from a non-Geneva Compact country must obtain a Kentucky license within 30 days of establishing residency in Kentucky. Kentucky Transportation Cabinet, http://transportation.ky.gov/driver-licensing/pages/non-us-citizens.aspx (last visited June 26, 2013). There was no proof about these issues, but Trooper Devasher professed much experience with valid foreign driver paperwork and said Reyes's was non-compliant.

that the time lapse between the initial stop and the dog sniff impermissibly exceeded the scope of the initial traffic stop.

Here, the Court agrees that *Gant* likely would invalidate the warrantless search,[5] but the United States does not rely on *Gant*. Hugo's positive alert was sufficient to establish probable cause to conduct the search pursuant to the automobile exception. Hugo is a certified drug dog, and Reyes did not challenge Hugo (or Nettles's) qualifications, which the record establishes. Further, Reyes was already in custody when Devasher called for the canine unit. His flight from Devasher and ensuing arrest eliminate the defense's temporal argument relative to Hugo's arrival and deployment. Accordingly, any delay in the arrival of the canine unit does not affect the search validity analysis. The sniff did not extend the stop impermissibly because Devasher already had arrested Reyes before Hugo's involvement.

Generally, the Fourth Amendment's warrant requirement guards against "unreasonable searches and seizures." *United States v. Heald*, 189 Fed. App'x 390, 393 (6th Cir. 2006) (citing *California v. Carney*, 105 S. Ct. 2066 (1985)). However, "[u]nder the automobile exception to the warrant requirement, an officer may perform a warrantless search of a . . . vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity." *United States v. Lyons*, 687 F.3d 754 (6th Cir. 2012) (citations omitted). The exception contains no separate exigency requirement. *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007). The

---

[5] In *Gant*, the Supreme Court invalidated a warrantless search of Gant's vehicle when, at the time of the search, he was in custody, handcuffed, and secured in a patrol car. Per the high court, the search incident to arrest exception did not save the search because officers could not have reasonably believed that Gant could have accessed his car at the time of the search or, based on the offense of arrest, that evidence of the crime at issue (which was driving on a suspended license) could have been found in the vehicle. Here, Reyes was secured and in custody when Devasher and Hawkins searched the vehicle.

Sixth Circuit clearly recognizes that "an alert by a properly trained narcotics dog while sniffing a vehicle is sufficient to establish probable cause for the search of a vehicle." *United States v. Patton*, No. 12-5450, 2013 WL 949481 (6th Cir. Mar. 13, 2013) (citing *United States v. Diaz*, 25 F.3d 392, 393-94 (6th Cir. 1994)); *United States v. Sharp*, 689 F.3d 616, 618-19 (6th Cir. 2012) ("An alert to the presence of drugs by a properly trained narcotics detection dog is sufficient to establish probable cause to search a vehicle." (citing *Diaz*)); *see also United States v. Randolph*, 173 F.3d 857, *3 (6th Cir. 1999) (table) ("[A] positive reaction by a properly trained narcotics dog is sufficient to establish probable cause for the presence of drugs, thereby justifying the issuance of a search warrant." (citing *Diaz*)).

As with any probable cause analysis, a court employs the totality-of-the-circumstances when evaluating a dog's credentials and reliability. *Florida v. Harris*, 133 S. Ct. 1050, 1056 (2013). "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Id.* at 1057.

Here, based partly on the discovery of the 4 Oxycodone 30 mg pills, Devasher determined to call for a drug dog.[6] The Government established that Hugo is a reliable and properly trained drug detection dog. Per Deputy Nettles, the North American Police Work Dog Association certified Nettles and Hugo in November 2011 during a seven-

---

[6] Defendant does not challenge Devasher's decision in this regard. On redirect, when questioned as to why he called Deputy Nettles to bring Hugo, Devasher indicated that the totality of Reyes's conduct factored into the decision. Specifically, Devasher testified to his belief that Reyes may have fled after being confronted about the warrant or that he may have fled for another reason.

week training course, and the same organization recertified both in November 2012.  *See* Government's Ex. No. 3.  The program includes staged trainings for vehicles, lockers, and building searches, and each canine is only permitted a certain number of false alerts. Hugo is certified in controlled substance, specifically methamphetamine, detection.  *Id.* Nettles further detailed the ongoing training he conducts with Hugo, including controlled training situations with vehicles that simulate real-life situations.  Government's Ex. No. 4.  Nettles confirmed that these training exercises include simulations that Nettles arranges himself, *i.e.,* he personally hides the finds, and blind simulations that others set up for him.  Hugo has never falsely alerted.  Nettles has deployed Hugo approximately 27-30 times.  The evidence of reliability and proper training is uncontradicted.

The totality of the evidence establishes that Hugo is a reliable and certified drug detection dog.  He was initially certified with Deputy Nettles in 2011, and he recertified with Nettles in 2012.  Nettles testified to consistent simulated training exercises.  Reyes offered nothing directly, or in cross-examination, to undermine the Government's proof. He did not challenge the dog or handler's certification, nor did he challenge the alert in question.  Hugo's positive alert to the area between the driver's side front door and passenger door established probable cause for officers to search the vehicle without a warrant. [7]

---

[7] The Court does not, on this record, decide the standing issue.  The United States primarily defends against the motion on standing grounds, alleging that Reyes lacks standing to challenge the search because he abandoned any expectation of privacy he had in the Escalade when he fled.  DE #19 (Response) at 3-5.  The United States relies on *United States v. Harris*, 1995 WL 111465, *2-*3 (6th Cir. 1995) and *United States v. Grecni*, 1991 WL 139703, *3 (6th Cir. 1991) (table), in support.  In *Harris*, the defendant, during a traffic stop, left the keys in his vehicle and fled from police.  *Harris*, 1995 WL 111465, at *2.  Law enforcement towed, searched, and inventoried the vehicle pursuant to department policy.  *Id.*  The Sixth Circuit affirmed that Harris lacked standing to challenge the validity of the warrantless search "as he fled the scene, thereby

Finally, as referenced previously, the Court rejects Reyes's argument concerning the lapse of time between the initial traffic stop and Nettles's deployment of Hugo. After Devasher subdued and apprehended Reyes outside the trailer, he formally arrested him, thus ending the traffic stop by custody. Devasher testified that, at that point, he intended to charge Reyes with traffic violations (no seat belt and no driver's license) and fleeing and evading. As Reyes was thus in continuous custody from that point forward and the traffic stop had clearly ended, the timing of Hugo's arrival and subsequent deployment would not impact the constitutional analysis. Defendant conceded this point analytically at the end of the hearing, although he continued to assert that law enforcement could and should have obtained a warrant prior to the search. The Court, as this opinion details, disagrees.

## III.    Conclusion

For the reasons stated, the Court **RECOMMENDS** that the District Judge **DENY** Reyes's pending motion (DE #17).

*    *    *    *    *

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. As defined by section

---

abandoning any expectation of privacy in the car." *Id.*  In *Grecni*, defendant left his car "unlocked and unoccupied with the keys in the ignition." *Grecni*, 940 F.2d at *3 (6th Cir. 1991) (table). On appeal, the Sixth Circuit confirmed that defendant "had no reasonable expectation of privacy in the car or any items found in the car." *Id.*

The record, as developed, does not indicate whether Defendant left the car keys in the vehicle or whether he took them when he absconded. Though a defendant usually has the burden of proving standing, cases have put the abandonment theory burden on the prosecution. *See United States v. Jefferson*, 451 Fed. App'x 833, 834 (11th Cir. 2011) ("The government bears the burden of proving abandonment . . . .") (citing *United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001)). Here, the record does not show whether Reyes took his keys or locked the Escalade when he exited the vehicle. The Court will not fill in the gaps by speculation and declines to rule on the basis of standing. The search was valid irrespective of any standing argument.

14

636(b)(1) and Rule 59(b), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for de novo consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 59(b) waives a party's right to review.

This the 12th day of August, 2013.

Signed By:

*Robert E. Wier*

United States Magistrate Judge